Case number 22-1002, In-Raid National Nurses United, et al. petitioners. Ms. Darrow for the petitioners, Mr. Gilliland for the respondents. Good morning, Council. Ms. Darrow, please proceed when you're ready. Good morning, and may it please the Court. 650 Americans died of COVID-19 yesterday, and a similar number will likely die today. Although no federal agency has a complete count of healthcare worker infections and deaths, the incomplete numbers that we do have are staggering. Since the beginning of the pandemic, more than a million nurses and other healthcare workers have become infected with COVID-19, and more than 4,100 have died. According to data provided by CMS, in January and February of 2022, just after OSHA announced that it was rescinding the Emergency Temporary Standard at issue in this case, 18% of all nursing home workers became infected with COVID-19 in just those two months alone. The daily rate of death is higher now than it was in June of 2021, when OSHA found that the Emergency Temporary Standard was necessary. At that time, as OSHA noted in the preamble to the ETS, the rate of death was about 500 per day. COVID-19 is, as OSHA said in its brief in this case, an unprecedented crisis. OSHA has also said that the impact of the pandemic has been borne disproportionately by nurses and healthcare workers who are called to care for those who become infected. Yet OSHA has left those very workers without necessary protections, in violation of its clear statutory duty. When Congress passed the OSH Act in 1970, it had the foresight to equip the agency with both the tools and the mandate to act quickly to protect workers in an emergency situation like the one we face today. As a practical matter, is the current ETS still in effect, in your view? And how is that actually being implemented on the ground? Because it hasn't been formally withdrawn. Correct, and thank you for that question. On December 27th, OSHA announced in a public statement published on its website, which is included as Exhibit 1 to our petition, that it was withdrawing the Emergency Temporary Standard. It has never walked back that position, aside from in a footnote in its brief to this court. And in OSHA, Secretary Parker has also announced that the agency has a non-enforcement policy with respect to the Emergency Temporary Standard. In our experience on the ground, my union represents registered nurses who work primarily in acute care hospitals. And when nurses have made complaints to OSHA, which they have continued to do, specifically two complaints were made in February by nurses at hospitals in Florida, both owned by the same healthcare corporation. They complained to OSHA that their employer had not notified employees of a COVID exposure in the workplace and other violations of the ETS, and they were told by field agents specifically that the ETS had expired and that they were no longer enforcing it and would not inspect it. So as a practical matter, the December announcement that it was being rescinded, the public statement by the Secretary of a non-enforcement policy, and then apparent instructions to field agents that the ETS has expired and shouldn't be enforced, the practical effect of all of that is that health care workers lack the necessary protections that OSHA itself found required to protect them. The beat of your complaint before us or your petition before us is that the agency has not gone forward with the permanent regulation by the date suggested by Congress. Is that a correct statement? Our complaint about the agency's conduct has two components. One is that it is treating the emergency temporary standard as rescinded, which is a violation of Section 6C2, and also that it did not issue a permanent standard within the six-month timeline that is required under Section 6C3. That's the one that I'm troubled about, about your case on that. We had a case not involving anything parallel to this, but tangentially, back in 1988, NRDC brought an action against O'Dell for not meeting a congressional schedule. And then Judge Ruth Ginsburg at the time wrote that where Congress has put a timeline like that into statute without specifying a remedy, Congress did not intend to subject it to judicial scrutiny, and that there would not be within the compass of the court to enforce that deadline. Isn't that, in that sense, at least parallel to this case? It's NRDC versus O'Dell. In this case, the clear statutory text is that OSHA has a six-month timeline for issuing a permanent standard. The purpose of that is to require that OSHA act quickly and expedite its proceedings. Yeah, in O'Dell, it was a reporting requirement and not a rulemaking, so it is distinguishable, but it was a reporting requirement that Congress imposed on the agency, and it clearly had passed a reporting deadline. It clearly had passed and is a unanimous opinion written by then-Judge Ruth Bader Ginsburg to the effect that when Congress puts that limitation in there, it does not specify a judicial remedy if that is a matter between the political branches and not something that can be remedied by the court. I'd also like to add that OSHA's own regulations interpret that portion of the statute as mandatory. The regulations provide that OSHA must expedite its own proceedings in order to meet the six-month timeline, which it views as required. Now, you know you're asking an extraordinary remedy in mandamus, and it is supposed to be that you are clearly entitled to the relief before we can mandamus. Are you clearly entitled to this relief? I believe so. I do understand that it is an extraordinary remedy, and I think that this is an extraordinary situation. The OSHA itself, again, in the preamble to the ETS, estimated that the multilayered approach that the ETS requires in healthcare settings will save about 776 lives and prevent 300,000 infections of healthcare workers in a six-month time period. So the loss of life in this case that is attributed to OSHA's non-action is quite extraordinary. The statute is unambiguous. OSHA has not provided this court with any sort of statement that the court may defer to except for in the ETS itself, in which OSHA says that it will remain in effect until it's superseded by a permanent standard, and the ETS itself contains no expiration date on its own terms. So we believe the extraordinary remedy is warranted here. Ms. Guerra, while the circumstances of the pandemic are certainly extraordinary, we still have to find that there's a clear duty for OSHA to act in an expedited manner here. And so where does that clear duty come from? I think that's difficult here because the Secretary can promulgate an emergency temporary standard, and then the statute requires moving forward with a permanent standard within six months. But in the process of 655B, the Secretary can always determine that a permanent standard is no longer necessary. It's not clear from the statute that they must promulgate a permanent standard. They could do an emergency standard, and then the Secretary could conclude within the Secretary's discretion that such a permanent standard was not necessary. So if that's the case, then where's the clear duty for OSHA to do this permanent standard? The Secretary could conclude that, but in this case has not. The Secretary made a finding that health care workers face a grave danger, that the provisions of the ETS are necessary for health care workers, and that finding has never been withdrawn or rescinded in any way. OSHA has never made a statement. It has never reached the end of the 655B process and concluded that the standard is necessary. So even if it is necessary, then why – I mean, OSHA has represented, the Department of Labor has represented that they're going to finish the permanent standard within, I don't know, I think they said six to nine months. Why is that insufficient? Or why is there a clear duty that they have to do so faster? I mean, they're suggesting that it's impossible for them to do it faster. So the combination of the non-enforcement of the ETS in this interim period and their failure to issue a permanent standard within six months has created a temporal gap of an indefinite period of time during which health care workers who face a grave danger at work lack necessary protections. And the statute doesn't contemplate that gap. It contemplates continuous protection for the workers who need it most. What would our mandamus look like? What would we be specifically mandating the agency to do? Thank you. What we seek is an order from this court that OSHA give full effect to the emergency temporary standard until it is superseded by a permanent standard. And also that if the ETS remains in effect in this interim period, the sense of urgency for the permanent standard is somewhat abated, but OSHA should be directed to adhere to its own timeline that it has proposed to this court or suggested to this court. And that's six to nine months from when they filed the brief. They are required by their own regulations to expedite the process. And in this case, they've let significant amounts of time go by from the time that they proposed the rule in the form of an emergency temporary standard. So far as the continued effectiveness of the emergency measure, the legal record before us is that it is still in effect, isn't it? Is that not the case? That is not the case. OSHA has not said that in its briefing to this court. It made the public announcement in December, and then it has been acting in accordance with that public announcement that the ETS is withdrawn. Can I ask you, Ms. Darrow, if we thought, suppose that the conclusion is made, and we'll ask the government about it obviously when they stand up, but that the emergency temporary standard is still in effect. If it's still in effect, then the relief you're asking for, and put aside the timeline for the promulgation of a permanent rule, just focusing on the ETS for now, the relief that you're asking for, if the ETS is still in effect, is that then the government has to enforce it? Is that the gap that remains if the ETS is in fact in effect? If this court holds that the ETS is in effect, then OSHA, of course, still has some prosecutorial discretion in order to determine in an individual case whether to prosecute or not, but it cannot maintain a blanket wholesale non-enforcement. It can't? It cannot. What authority do you have for that? I have a couple of cases. I think this concept was best expressed in the OSHA context in a district court case in this circuit, and surely you don't think this court could order OSHA to enforce its regulation? This court can order OSHA to give full effect to its regulation, and enforcement is one piece of that. There are other components, important components. I'm not sure where we would get the jurisdiction to do that. We have jurisdiction to review orders and judgments of agencies, but as far as the general execution of the law, I don't know of a statute that gives us jurisdiction to do that. Sure. What we're asking the court to do again is to give full effect to the emergency temporary standard, and that includes things in addition to enforcement to address if I have the opportunity. I'd also like to mention that the emergency temporary standard required states that have their own state OSHA plan to implement a standard that's equal to or better than the emergency temporary standard. Since December, many states that have their own state plan, including large states like Virginia and North Carolina, have withdrawn those state plans entirely and officially, leaving those workers completely unprotected. So if the ETS is ordered to be in effect, regardless of OSHA's enforcement, those states will be required to have an ETS that is greater, that is equal to or better. The importance of a uniform national standard is something that OSHA addressed in the emergency temporary standard. There were business groups who complained about there being a patchwork system that was impossible or burdensome to comply with in terms of COVID regulations in the workplace, and they asked for a national standard for that reason. Those may or may not all be good policy reasons for OSHA to move forward, but we still have to, as a court, have jurisdiction over this matter. And as Judge Santel mentioned, there's the Hodel case. There's sort of a general background presumption that the executive branch needs to have the ability to organize its priorities. And this statute explicitly allows the secretary to set priorities. In light of all of that, I'd like you to say a little bit more about where there's a clear duty for OSHA to do this, a duty that gives us as a court jurisdiction to order OSHA to take one of the actions that you're pressing for. Sure. So it's true that OSHA does have discretion to organize its own priorities, and that discretion emanates from Section 6G of the Act. What 6G says is that OSHA must prioritize workplaces and industries where workers face the most urgent need for protection. And OSHA has determined that that is health care workers right now during the pandemic. So even exercising its 6G discretion, OSHA must prioritize these workers. Well, OSHA is now saying, I mean, that is a priority, but they're saying there are other higher priorities, right? They have not said that. They said in the emergency temporary standard that health care workers face a disproportionate burden of the pandemic, and they have never made any statement to the contrary. Well, they suggested that the vaccine ETS was of higher priority, and so they spent resources pushing that out quickly. And they said now they're going to turn back to this ETS. They did say in their brief that the vaccine ETS took precedent for a short period of time, which is a. But the reality of that timeline is that that was issued in November following a September order by the administration that they implement such a standard. So there was a month period where they were working on that standard. It was struck down by the Supreme Court in January. And OSHA has there's no evidence that they were expediting that proceeding, either in the issuance of the ETS or setting permanent rulemaking. And since January, that that rule has not been in effect. And OSHA, by way of example for their slow action in this case, the emergency temporary standard was issued in June. Normally, they'll set a hearing at the same time they announce a proposed rule or shortly thereafter. They didn't announce a hearing in this matter until a couple of weeks ago. And they set the hearing for April. The hearing was requested back in August. They didn't set it then. They let a lot of time go by and are not expediting the proceeding as they're required to both under the statute and under. Hey, Mr. Let me make sure my colleagues don't have additional questions for you at this time. Yeah. OK, then why don't we we'll give you some time for rebuttal and we'll hear from the government now, Mr. Golan. OK. Morning, your Honor, may I please report? COVID-19 pandemic has required the secretary to make difficult choices. You think you have just a little more points? Pandemic has required the secretary to make difficult choices regarding the allocation, which is limited resources. That has included delaying the health care final rule in lieu of a separate. Yes, that was your more. Those decisions by the secretary have been rational in the context of the statute. They've been based on legitimate statutory concerns that they've been taken in good faith. Can I ask you at the outset, what is the government's position on whether the emergency temporary standard is still in effect? The emergency temporary standard has not been withdrawn in the sense that it is still on the books. Oh, wait, I think quite. Can you speak directly to the mic? Sorry, I'm having a little trouble hearing you. Closer to you. The U.S. is still in effect in the sense that it is on the books. Mr. O correctly described position that that OSHA has taken the December 27th announcement. Effectively announced non-enforcement policy and the secretary, as as I just said, it would have been proceeding through enforcement and investigations of the general duty clause. So let me let me ask, can I just say that? So so the government thinks that is still in effect and the December 27th. So the government must believe then that it didn't expire by operation of law, by operation of the statute after six months, because that would have happened on December 21st. That's correct. Let me address the withdrawal specifically. No, no. Before you before you address the withdrawal, just the the lapse of the six month would have preceded the withdrawal. Right. So I assume. So I assume by virtue of the fact that the government on December 27 felt like it needed to say something about the ETS, then the government must believe that the ETS didn't expire on December 21st. Correct. The secretary's position is not that the ETS automatically expires at six months. At the time that OSHA made the announcement on the 27th, OSHA expected that the rulemaking to finalize the health care rule was going to take many, many months. Best case scenario, there would have been six to nine months for the finalize the vaccination and testing ETS. And then there would have been a best case scenario, another six to nine months to health care. So given, you know, dicta in many cases that have sort of either assumed that the ETS expires at six months or or treated it as having a maximum duration. The secretary believes because the secretary believes that Section 6G allows some extension in the rulemaking, the secretary also believes that there's some reasonable amount of time that the agency can continue enforcing the ETS. But with the extended period of time, whatever the outer bounds of that reasonable leeway is, the secretary believes it would exceed those bounds with its projection of how long that will make it. So so I'm sorry, is it the secretary's position that the ETS does expire at six months or within some short period after six months, or just that it's unclear whether it expires after six months? Secretary's position. Is that it does not expire at six months because the secretary has discretion to extend the rulemaking, the enforcement doesn't expire six months, but. It is. Enforcement of ETS is is an extraordinary remedy for OSHA, and so there. OSHA believes there is. There would be an unreasonable amount of time for which the secretary could continue enforcing. And I'm not sure I've ever heard a yes or no is what the OSHA's position is that the ETS is in effect now. Just give me a yes or no, is it in effect? It is not being enforced now. It is not. But is it in effect? Sorry, I just want to follow up on Justin's question. Is it in effect? I know that you're you're saying that it's not being enforced and that gets to the question of enforcement discretion. And if I've misinterpreted your question, I'm interested in the same answer. And I just. Just want to get an answer to not the enforcement question, but whether the the order, the emergency temperature is still in effect. I think that's what we're all asking for an answer to. Yes. Because that's important, right? Because obviously OSHA could begin enforcing something that it had previously decided not to enforce. Correct. And OSHA, on the 27th, when OSHA announced that it would be withdrawing, the plan was to issue a federal register notice withdrawing, in which case it would not be. In light of this litigation, in fact, it was filed on an emergency basis. And she decided not to go forward with. Issuing a federal register notice to remove the ECS from the Code of Federal Regulations in the event of this court, then, you know. Ordered the secretary to continue enforcing, in which case. The secretary would have to issue another federal register notice. It could it would cause a lot of confusion with the regulated community. It could cause enforcement issues. What is your argument from based on the statutory text that an ETS can continue in effect for six months? If there's no superseding regulation. Well, I mean, as the petitioners point out, the text of the statute does say that an emergency temporary standard continues until superseded standard. It has to be a standard promulgated in accordance with the procedures prescribed in paragraph three, right? C3. And so now that you're passed. Promulgating something within six months. Does that mean that you have not promulgated a standard? Within the procedures prescribed by C3 and therefore the ETS lapses. Patricia has not promulgated a permanent standard pursuant to the 6B procedures. They haven't done it pursuant to the C3, right? Which requires following subsection B and promulgating a standard within six months. A permanent standard within six months. Correct. The secretary views that six month period to be the same as the other timelines in 6B that this and the El Congreso cases determined based on 6B weren't etched in stone that the secretary has discretion to exceed. So I don't think that to say that the secretary hasn't finalized the standard in six months. I don't think that necessarily. So even if I agree with you that the secretary has more than six months to finalize a standard, that doesn't go to the question about whether the emergency temporary standard lapses. If you fail to promulgate a permanent standard within six months. Because those are two different questions and maybe you need to take, maybe the agency has some discretion to take a longer time for a permanent standard. But C2 suggests that failure to do that, perhaps it suggests this, I'm interested in your argument about this, means that the emergency temporary standard simply lapses. I think reading the provision in the context of the section of 6C that says that it will continue until superseded by a standard would allow the secretary to continue enforcing for a limited period of time. And then that extension could be challenged under the track factors, just as this case is. In that case, the interests prejudiced by the delay would be the employer who is forced to continue complying. So it wouldn't be an unlimited amount of time. When you say it wouldn't be an unlimited amount of time, are you saying it wouldn't be an unlimited amount of time because an action could be brought like this one that would require, in response to which a court would require something to happen? Or suppose there's never any action. Suppose nobody ever brings a lawsuit. Is there something in the statute that, in your view, means that the emergency temporary standard goes past six months, but then lapses after some, I think you called it a reasonable period after six months? Where do we, where's that? Why wouldn't it just continue? Well, there is, there is, there is nothing I can point to in the statute that would require it to expire. But I believe it would operate in the same way that 6B standards operate, the secretary's discretion in that area where employers can come to the court and say you have unreasonably, unreasonably delayed. And they've done so in the court, as in the Octor case, UAW v. Donovan. You know, that's how those cases have operated. The secretary had discretion and at some point abused that discretion by delaying too long. And I think that could, that would be the same principle. And can I ask a follow up question to Judge Rouse's question about whether the ETS authority lapses automatically after six months? And I just want to make sure I understand the government's position on this. If it were true, I'm asking you to argue against yourself in a way, but bear with me for just a second. If it were true that the, that the ETS lapses after six months, because at that point, a permanent standard couldn't be adopted in accordance with C3. I think that's the question that Judge Rouse puts to you, and I have the same question. Then would it follow from that, that then any permanent standard that came after six months also wouldn't be promulgated pursuant to C3. So you could never have a permanent standard either once you get past six months. In other words, do they go together? No, Your Honor, because the issuing the emergency temporary standard serves as a proposal, which then triggers the normal 6B processes. So the government's view is that the ETS itself would just be treated as an NPRM, notice of proposed rulemaking. And then the normal rules apply in terms of the timeline and being able to bring that to a final. So then what's the limit on the Secretary's ability to just do everything through emergency temporary standards? If you can do something as an emergency temporary standards, not following Section B and not following requirements of the APA, and that standard continues, you know, for some reasonable period of time, perhaps indefinitely, what, I mean, that doesn't seem consistent with the scheme that Congress enacted. I mean, the emergency temporary standard is an exception, right? It's an exception to the ordinary procedures. It's, you know, and Congress explicitly says it's for six months, right? So it is temporary. So I'm not sure how the government can interpret it quite this way. The limit to what PUSHA can issue as an emergency temporary standard is in the high bar that it has to meet in order to issue it in the first place. The finding of grave danger and the finding that ETS is necessary to address that grave danger, which is a higher standard than the Secretary has to meet in a normal rulemaking. So I think once the Secretary makes that finding, it is reasonable to think that Congress intended that extraordinary situation to be addressed for at least a reasonable period of time. Is there anything that precludes the Secretary from issuing one ETS, and then if, say, we assume that that lapse is after six months by virtue of the statute, could the Secretary then immediately enact a subsequent ETS for another six months, you know, along the same terms, you know, finding there's still grave danger, we do this emergency? Could the Secretary keep doing that? Would that be consistent with the statute? Is there anything that prevents that from happening? The Florida Peach Growers case from the Fifth Circuit found that the Secretary could make changes to or issue subsequent ETS on this, not the exact language, but under the same terms as he could issue an original. So I think in that, in that scenario, if the Secretary were to reaffirm a grave danger finding and that it was still necessary, then the Secretary could reissue or revise the ETS. Again, still subject to challenge from an employer. OK, let me make sure my colleagues don't have additional questions for you, Mr. Gellin. Well, thank you for your argument, and we'll give Ms. Darrow two minutes for your rebuttal. Thank you. I'd first like to address the question from two of the judges about jurisdiction to order OSHA to expedite the standard. And this court has before in public citizen health research group, the OCHTR, that's 702. 1150, found that under 6G, it could order OSHA to put a particular standard at the top of its list of priorities and ordered expedited rulemaking towards that standard. Next on this question of, you know, whether a blanket non-enforcement policy is an exercise of prosecutorial discretion, the case that I was referring to earlier, the district court case, which applies OSHA in particular, applies this concept to OSHA in particular, finding that an announcement, OSHA announced that it was no longer going to accept forms that it previously required, and that this amounted to not simply an exercise in its discretion to not enforce a rule, but the suspension of the requirements entirely, which the court found was outside of prosecutorial discretion. In this circuit, a similar concept, but under the Merchant Marine Act, is found in the case Crowley Caribbean Transportation v. PINA, by the site if you're interested, and the court distinguished between an unreviewable decision to forego enforcement in a particular case versus a reviewable statement of general policy of non-enforcement. And here, I think we've heard, it's undisputed that OSHA has a policy of non-enforcement, which is not... Are you bringing that statement of non-enforcement, if it is in fact a formal adoption of position, are you bringing that for review here? Your petition to the court, petition for mandamus, did not petition for review of the order, did it? The announcement of a blanket policy of non-enforcement was made in February after the briefing was completed in this case, and we are not bringing, seeking review... Right, so that's not before us. Correct. All that's left seems to be, before us, a general policy is being followed, and I don't know what our jurisdiction is. You know, we had a case a few years ago concerning some oil and gas wells, where we had that same situation, and we agreed that perhaps the agency was following the policy, but we didn't have an order before us to review, and we had no jurisdiction. I'm not sure if we can review an announcement that wasn't even made at the time the petition was filed here. Well, the announcement was also made in December, on December 27th, which is before this court, that it was withdrawing the ETS without any, you know, without any statement of reasons why, which is required under Section 60 of the Act. I'd also just like to point out that OSHA has never before allowed an ETS to lapse after six months, even though it has issued emergency temporary standards that, you know, that have continued in effect while the permanent rulemaking procedure continued, taking longer than six months. And those cases are detailed in our brief. And to get to your question about what's to stop the Secretary from using his emergency powers to issue and reissue to get around 6B rulemaking, I agree with what Council said, which is that the standard is higher. There must be a finding of a grave danger and that the provisions are necessary to prohibit that grave danger. What we're arguing in this case is that OSHA must expedite its permanent rulemaking so that that situation does not arise. We don't want the emergency temporary standard to be out there indefinitely. We want a permanent standard to be issued expeditiously in accordance with the statute, with the regulations, and with the prior case law of this circuit. We, you know, if the Secretary were to determine that the ETS should be modified in some way or extended, it can be modified. It could be reissued. And the Secretary would have to, again, state its reasons for doing so as required under 6B. And in this case, there has been no 6B statement other than in the emergency temporary standard itself and its preamble, which establishes that the emergency temporary standard is necessary to prevent a grave danger. Okay. Let me make sure my colleagues don't have additional questions for you, Ms. Darrow, at this time. No. No further. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Rao, Sentelle